Richardson, J.,
dissenting. — In this case the Jury were advised, that it was not necessary for the State to produce Mrs. Brown as a witness; and, assuming that Oakly had proved the pin to have been stolen — that the possession of it by Clark, raised the presumption that he had stolen it, if he did not show that he got it honestly.
They found Clark guilty of the felony, and the notice of appeal is as follows:
“2d. Because there was no other proof that the breast-pin was stolen, except the testimony of the owner, that he had left it in his bed room, where one Mrs. Brown was staying, and that he was informed by her that the said pin had been stolen ; that this evidence of the felonious taking, was incompetent, and Mrs. Brown could and should have been produced as a witness, to prove the loss of the property.
3d. Because his Honor charged the jury that the possession of the breast pin by the prisoner was presumptive evidence of his having stolen it; whereas, it is respectfully submitted, that his Honor should have charged, that such presumption could only arise when the jury should have been satisfied that the properly had been actually stolen.
4th. Because the verdict was contrary to law and evidence.”
The argument under these grounds is, that the felony charged was assumed to have been committed upon the bare suspicions of Mr. Oakly, the owner of the pin, which suspi *317 cions had been put into his head by another person, (Mrs. Brown,) without adducing Mrs. Brown herself, who was within the control and reach of the prosecuting officer; and that the presiding judge indicated to the jury, that they might, upon such evidence, assume the felony to have been proved; and that being once assumed, the possession of Clark raised a presumption that he had stolen the pin.
Let ns consider this argument and these judicial positions.
In every prosecution for a felony, the primary object is, first to prove that the alleged felony has been committed by some one.
This is the reason why the owner or keeper of the thing stolen, is invariably required. Without such a person deposing, to the felony, the taking of the thing can rarely be called a felonious taking, unless you pervert the law and assume guilt in the defendant, instead of innocence..
It is, after such foundation for the prosecution, i. e., the felony proved, that the presumption from the bare possession by the accused, arises.
If I have conceived the evidence adduced rightly, and expounded the law applicable to the case, the presumption of guilt against Clark has been assumed upon a previous assumption of a felony never proved.
If, for instance, A were detected riding off upon the horse of B, at daylight, there can be no presumption that A stole the horse. For that he might have got him honestly, is the natural, true and legal presumption, until B shall have deposed that the horse had been stolen from him.
And then, and not till then, may A be found guily of the felony upon the presumption ; unless he explains such possession to have been of a fair character. Any other meaning, if attached to the rule, would be assuming the defendant guilty, till he proved his innocence.
This exposition of the rule of presumptive guilt, gives the reason of another important rule of the criminal code — that the State is bound to lay before the Court the entire evidence against the accused, or give a reason for its non-introduction, as that it cannot be had, or is evidently superfluous, or the like.
This is also a very important rule in conducting criminal prosecutiotis, and which I think has been too much disregarded in the case before the Court. And I must acknowledge that the same objection to the verdict in the case of the State v. James F. Teideman, arising from the absence of Nelme, the Rail Road officer, struck my understanding, though not to the same extent as in this case. There was in that case, as well as in this, too short proof of the supposed felony.— And the cause of my writing this dissenting opinon, is that I would restrain a practice of omitting essential and satisfacto *318 ry evidence in every prosecution for felony, and of resting too much upon the presumption of guilt, in an unknown, ob- ' scure or bad man, whose legal rights are to be lawfully protected by the Court, however demeritorious the individual may be.
The common law is a code of severe punishments. The object seems to be ta eradicate mischiefs by severe inflictions. But the same code bears lightly and kindly, humanely and generously, upon the person accused of crime. It seems as though in carrying on prosecutions, it would follow almost the converse rule of the former severe spirit, in its punishments.
And hence arises the many humane rules laid down by all the criminal writers, to enable the aecused to escape, unless the evidence of his felony be plenary and convincing.
Until so much evidence be adduced against him, he is presumed to be innocent. It should be ever borne in mind, that such presumptions of guilt are not presumptions of law, but are merely conclusions permitted under a certain state of facts.
It is the same rule that points out the reasons of the distinction between appeals from verdicts of guilty in criminal cases, and verdicts in civil actions.
In civil actions the end is to quiet litigation ; and hence it is, that Courts avoid disturbing verdicts in such cases. But in criminal prosecutions, Courts more readily interfere, in order to restrict verdicts to cases of guilt clearly proved, lest the innocent should be, even perad ven ture, punished.
He that does not conceive of the distinctions I have laid down between the punishment of crime and the evidence required to prove a particular instance, and also of the distinction between appeals from criminal convictions, and verdicts in civil actions, has mistaken the essential texture of the common law ; and I will add, from such confusion of very opposite rules arises full one-half of the discontent with the common law code of punishments and prosecutions; whence proceeds the notion of a greater acerbity than really exists.
Now, to apply this (somewhat discursive) exposition of criminal evidence, would it not be better to grant a new trial to Clark, and to let him be convicted upon the more plenary evidence of Mrs. Brown touching the felonious taking of the pin, which is the condition precedent to any presumption against the defendant ?
I should say so, and also in the case of Tiedeman, by adducing Mr. Nelme, who would as probably prove the felonious taking of the hats, and render the conviction satisfactory.— Whereas the evidence adduced, while it tended strongly to implicate a suspected shopkeeper and a guerilla, in receiving goods, but which goods were by no means clearly proved to have been feloniously taken, entirely lacked the very founda *319 tion, without which the presumption of guilt could not arise.
In the case of Teideman, there was another ground taken,, to wit: that “in commenting on the defect of any evidence that Csesar had any thing to do with the box, the Judge remarked to the jury that it might be explained by the late appearance of the witness Nelme. But the jury were promptly and decisively told that this observation was not intended to supply evidence, but only to account for the omission by the Attorney General, to produce evidence to that point.”
Upon this ground for a new trial, the counsel urged that the error of the Judge was not entirely remedied by the remark, that this observation was not intended to supply the evidence of Nelme, &c.
And I cannot but feel, from the very correction of his own observation inadvertently made by the Judge, that it may have had undue weight with the jury in inducing them so to supply the evidence of Nelme, which was so important to the prosecution.
In a case of such uncertain influence, which we cannot possibly measure, I consider that the defendant has claims for a new trial, and the prosecution itself would be more satisfactory, if the conviction of the defendant followed the actual evidence of Nelme. It is very like the case of a Judge receiving incompetent evidence, or rejecting that which is competent. In such cases, Courts do not weigh the evidence which has been rejected, but give a new trial, lest injustice should have been done by the verdict. I have commented on the case of Tiedeman as illustrative of the argument, which I think ought to induce the Court to grant at least to Clark a new trial, and for the purpose of further shewing why I consider a dissenting opinion proper, if not necessary.
Wardlaw, J. — I join in dissenting in Clark’s case.

Motion refused.